IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK05-41272 |
| | ) | |
| MICHAEL R. BORDEN and | ) | CH. 7 |
| RHONDA F. BORDEN, | ) | |
| | ) | |
| Debtor(s). | ) | Filing No. 162, 173 |

MEMORANDUM

Hearing was held in Lincoln, Nebraska, on June 12, 2006, regarding Filing No. 162, Motion to Determine Lien Priorities Involving an Artisan's Lien Claimed by Bellamy's, Inc., and for Waiver of Adversary Proceeding Requirements, filed by Genoa National Bank, and Filing No. 173, Objection, filed by Bellamy's, Inc.  Philip M. Kelly appeared as Chapter 7 trustee, Don Swanson appeared for Genoa National Bank, and George Vinton appeared for Bellamy's, Inc.  This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.  This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K ).

The parties, Genoa National Bank ("Genoa") and Bellamy's, Inc. ("Bellamy's"), have agreed to submit the issue of priority of liens in a tractor and cornhead to the court as a contested matter and they have waived their rights to have the matter determined in an adversary proceeding as appears to be required under Federal Rule of Bankruptcy Procedure 7001(2).  The court has agreed to this procedure.

It is undisputed that Genoa holds a properly perfected first-priority blanket lien on all of debtors' personal property.  Bellamy's claims prior possessory artisan's liens in the amount of $5,092.80 for repairs performed on debtors' John Deere 4840 tractor ("the tractor") and John Deere 843 cornhead ("the cornhead").  These items may be referred to in this memorandum as "the equipment."

Prior to bankruptcy, debtors granted Genoa a blanket lien on their personal property, including all machinery and equipment.  Also prior to bankruptcy, debtors delivered possession of the equipment to Bellamy's for repairs.  The debtors did not have funds available to pay the repair bills and Bellamy's refused to release the equipment until the repair bills were paid.

The debtors filed a voluntary petition under Chapter 12 of the Bankruptcy Code on April 1, 2005.  At that time, the equipment was still in possession of Bellamy's.

In June 2005, the general manager of Bellamy's discovered that the tractor had been removed from real property which was in the control of Bellamy's.  The general manager assumed that Mr. Borden had removed the tractor and Mr. Borden verified that he had done so in order to be able to farm during the 2005 growing season.  Mr. Borden agreed to return the tractor to the possession of Bellamy's as soon as he no longer needed it.  In September of 2005, Mr. Borden picked up the cornhead with the intention of using it to harvest corn.  The general manager of Bellamy's once again discovered the equipment was missing and discussed the matter with Mr. Borden.  Mr. Borden agreed that he would return the cornhead as soon as he had completed the

harvest.

Eventually, sometime in the fall of 2005, the equipment was returned.  However, the tractor was and still is inoperable as a result of a breakdown during its use by Mr. Borden.

Genoa was granted relief from the automatic stay with regard to its interest in the equipment.  However, Bellamy's claims an interest in the equipment with priority over the security interest of Genoa pursuant to Nebraska statutory authority, Neb. Rev. Stat. § 52-201(1) and Neb. U.C.C. § 9-333.

Section 52-201(1) states:

Any person who makes, alters, repairs, or in any way enhances the value of any vehicle, automobile, machinery, farm implement, or tool or shoes a horse or mule at the request of or with the consent of the owner or owners thereof shall have a lien on such vehicle, automobile, machinery, farm implement, tool, horse, or mule while in such person's possession for the reasonable or agreed charges for the work done or material furnished and shall have the right to retain such property until such charges are paid.

Section 9-333 provides as follows:

(a) In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:

(1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2) which is created by statute or rule of law in favor of the person; and

(3) whose effectiveness depends on the person's possession of the goods.

(b) A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise.

The statute that creates the possessory  lien, Section 52-201, does not expressly provide that a security interest takes precedence over the lien created by that statute.

The question to be decided is whether Bellamy's lost its priority over Genoa because it did not maintain continuous possession of the equipment.

There is no Nebraska case law interpreting Section 52-201 with regard to this particular issue.  There is an abundance of case law around the country interpreting statutory provisions similar to Section 52-201. See David B. Sweet, Annotation, Loss of Garageman's Lien on Repaired Vehicle by Owner's Use of Vehicle, 74 A.L.R. 4th 90 (1989), and cases discussed therein.  A review of that A.L.R. article and the many cases discussed leads to the conclusion that there is no agreement within and among the courts.  Some cases interpret language very similar to Section 52-201 as requiring continuous possession, even though the statutory language does not include

the word "continuous". Other courts find as a matter of policy that the loss of possession under various circumstances should not deprive persons or entities in the position of Bellamy's of their statutory lien. Some courts suggest that giving up possession of the equipment with an agreement by the repair entity and the owner that the owner will return the equipment at some definite or indefinite time does not deprive the repair entity of its possessory lien once the equipment is returned. Others disagree, partly because that interpretation of the statutory language permits the owner of the property to determine the priority status of liens held by secured parties and repair entities.

After considering the cases cited in the briefs and the cases discussed in the A.L.R. article, I conclude that the statute should be interpreted to mean that the repair entity, Bellamy's in this case, must maintain continuous possession in order to maintain lien priority over the interest of a secured creditor such as Genoa. The Honorable Ralph H. Kelley, bankruptcy judge of the Eastern District of Tennessee, when interpreting a Tennessee law similar to that of Nebraska, stated:

> Consider the situation, as in this case, where Secured Party has a perfected security interest in a truck that is repaired by Garage, which afterward releases the truck to Debtor in return for a check that is dishonored. Debtor remains in possession.
>
> Even if it knows of the repairs, Secured Party has reason to assume Garage was paid and has no claim against the truck. Otherwise, the debtor would not have possession. Indeed, having given up possession, Garage has no common law lien against the truck to secure payment of the repair bill. Furthermore, secured parties are not likely to know of all the repairs done to a vehicle in the debtor's possession.
>
> The defendant in effect argues that Garage should have not just a secret, potential lien on the truck but a secret, potential lien with priority over Secured Party's perfected security interest, no matter how long the debtor remains in possession after the repairs were done. Such a situation would be intolerable and goes against the grain of the UCC.
>
> A secured party should be able to determine at any moment the place of its claim among all claims against the collateral. This requires notice. In this respect, possession serves a dual purpose as to an artisan's lien for repairs. It makes the lien possible and it gives notice of the lien. Once possession is relinquished, the person who did the repairs cannot expect to have it reinstated with priority. That would create an ever-present dangerous uncertainty for parties, including prior secured parties, who deal with the debtor with respect to goods in his possession.

Mack Fin'l Corp. v. Peterbilt of Chattanooga, Inc. (In re Glenn), 20 B.R. 98, 100 (Bankr. E.D. Tenn. 1982).

Judge Kelley then quotes from a dissent in an opinion issued by the Mississippi Supreme Court which agreed that if the repair entity regained possession of the property, the lien which had been lost by giving up possession was reinstated, along with its priority. In his dissent, Chief Justice Patterson stated:

> The result of the opinion, I fear, is to permit priority of creditors to be

determined by the debtor. If he chooses to return property once relinquished by a repairman, the repairman prevails, but if he chooses not to relinquish possession of the property, the secured creditor prevails.

At the least, the majority opinion, in the absence of voluntary relinquishment, invites competition for possession between a secured party and a repairman who has previously relinquished possession of the property.

I dissent because I am convinced the legislature by adoption of the Uniform Commercial Code intended priorities to be determined in a uniform manner by statute, and not by choice of a debtor or by result of a race between creditors for possession.

Glenn, 20 B.R. at 100-01 (quoting Thorp Comm'l Corp. v. Mississippi Road Supply Co., 348 So.2d 1016, 22 U.C.C. Rep. Serv. 818, 821-22 (Miss. 1977)).

The Nebraska legislature has adopted the Uniform Commercial Code which deals with liens and their priority. The legislature has also adopted statutory provisions which provide for exceptions to the general lien priority provisions identified in Chapter 9 of the Uniform Commercial Code. Section 52-201 is such an exception and that exception is acknowledged in U.C.C. Section 9-333. To permit a possessory lien holder to have its lien reinstated with priority over a prior perfected security interest upon return of the equipment from the owner to the repair entity would introduce extreme uncertainty and significant opportunity for litigation over priority of liens.

Separately from the above analysis, the fact that this issue comes up in a bankruptcy case must be considered. The repairs were made prior to the bankruptcy case being filed. The bills were sent and received prior to the bankruptcy case being filed. The possessory lien arose prior to the bankruptcy case being filed. After the bankruptcy case was filed, the debtor, through self-help, took possession of the equipment. At that point in time, Bellamy's had no right to obtain possession of the equipment without permission of the court. The automatic stay of 11 U.S.C. § 362(a) prohibits any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. § 362(a)(3). In addition, the Bankruptcy Code prohibits any act to create, perfect, or enforce any lien against property of the estate. § 362(a)(4). Finally, the Bankruptcy Code prohibits any act to create, perfect, or enforce against property of the debtor any lien to the extent such lien secures a claim that arose before the commencement of a case under this title. § 362(a)(5).

Bellamy's took no action in the bankruptcy court to protect its possessory lien, to properly retake possession of the equipment, or to attempt to determine the priority of its claimed lien vis-à-vis Genoa or any other possible secured creditor. Instead, it, through its general manager, simply agreed to allow the debtor to retain possession of the equipment until the debtor was finished with it at some indefinite future date. Then, when Genoa took proper action in the bankruptcy court to obtain relief from the automatic stay to liquidate its collateral, Bellamy's finally asserted, for the first time during the pendency of the bankruptcy case, that it has a possessory lien.

Even if continuous possession is not required in order to retain priority, in this case, Bellamy's does not have a possessory lien with priority over the security interest held by Genoa because Bellamy's lost its lien when it lost possession of the equipment and should not have been able to regain possession without obtaining relief from the automatic stay.

In conclusion, the perfected security interest of Genoa takes priority over the lien claimed by Bellamy's under Section 52-201.

Separate order will be entered.

DATED this 28th day of July 2006.

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
        *Don Swanson
        George Vinton
        Philip M. Kelly
        U.S. Trustee

Movant(*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.